## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

EQUAL ACCESS ACTION NETWORK,

and                                                        Civil Action Number:

ANNETH LEZCANO and
JACK KANG, individually, and on
behalf of themselves and all others similarly situated,

      Plaintiffs

v.

STEIN MART, INC.

      Defendant

_____/      **CLASS ACTION COMPLAINT**

**1. VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT OF 1990, 42 U.S.C. §12181 *et seq.***

COMES NOW Plaintiffs **EQUAL ACCESS ACTION NETWORK ("EAAN") and ANNETH LEZCANO ("Lezcano"), and JACK KANG ("KANG")** (collectively, hereinafter referred to as "Plaintiffs"), individually and on behalf of all other individuals similarly situated, hereby file suit against Defendant **STEIN MART, INC.** (hereinafter "Defendant" or "STEIN MART") pursuant to the Americans with Disabilities Act, Title III, 42 U.S.C. § 12181 et seq. ("ADA"), and alleges the following:

## INTRODUCTION

1.       Plaintiffs Equal Access Action Network, Inc., Anneth Lezcano and Jack Kang bring this action to Federal Court to end the discrimination and exclusionary practices against blind, visually impaired and low vision individuals.

2.       Lezcano and Kang are both visually impaired and legally blind persons who require screen reading software to read website content using their computers. Plaintiffs employ the terms "blind" or "visually impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200. Some blind people who meet this definition have limited vision. Others have no vision.

3.       Plaintiffs, individually and on behalf of those similarly situated persons (hereafter "Class Members"), bring this Class Action to enforce civil rights against Defendant for its failure to design, construct, maintain, and operate its website to be fully accessible to and independently usable by Plaintiff and other blind or visually impaired people. Defendant's denial of full and equal access to its website, and therefore denial of its products and services offered thereby, is a violation of the rights of all visually impaired persons under the Americans with Disabilities Act ("ADA").

4.       Because Defendant's website, listed under the domain www.steinmart.com (the "Website" or "Defendant's website"), is not equally accessible to blind and visually impaired consumers in violation of the ADA, Plaintiffs seek a permanent injunction to cause a change in Defendant's corporate policies, practices, and procedures so that Defendant's website will become and remain accessible to blind and visually impaired consumers.

## JURISDICTION AND VENUE

5.     This is an action for declaratory and injunctive relief.  This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as Plaintiffs' claims arise under Title III of the ADA, 42 U.S.C. § 12181, *et seq.*, and 28 U.S.C. § 1332.

6.     This Court has personal jurisdiction over Defendant because it conducts and continues to conduct a substantial and significant amount of business in the State of Florida, its principal address is listed at 1200 River Place Blvd, Jacksonville, Florida 32207, and because Defendant's offending website is available for consumers throughout the state.

7.     Venue is proper in this District pursuant to 28 U.S.C. §1391 because Defendant conducts and continues to conduct a substantial and significant amount of business in this District, Defendant is subject to personal jurisdiction in this District, and a substantial portion of the conduct complained of herein occurred in this District.

## PARTIES

**EQUAL ACCESS ACTION NETWORK, INC.**

8.     Plaintiff EAAN, is a federally recognized 501(c)(3) non-profit entity, duly organized and existing under the laws of the State of Delaware and located in Wilmington, Delaware.

9.     EAAN members consist of, in part, qualified individuals with disabilities (as defined by the ADA) who include, but are not limited to, those who are mobility impaired, hearing impaired and sight impaired, as well as able-bodied persons.

10.     A significant component within EAAN's mission is to ensure the complete and equal inclusion of its disabled members in all areas of their lives and in each beneficial aspect of society.  To that end, EAAN advocates for and with disabled individuals who have been denied

access, but who desire to take advantages of the redress that is offered under the various relevant statutes, including Title III of the ADA, as in the instant case.

11.    As EAAN's primary purpose is to ensure that the rights of its members are protected and enforced, especially as it relates to the participation in and benefit of goods, privileges, services, etc., it is essential that EAAN bring claims such as those underlying this complaint with and on behalf of its members.   Specifically, the organization seeks compliance with the ADA through educational efforts, and when necessary, litigation.   As such, protecting and enforcing the rights and interests of those EAAN members through this litigation action is essential to its fulfilment of the entity's purpose and foundational mission.

**ANNETH LEZCANO**

12.    Plaintiff Lezcano, at all times relevant and as alleged herein, is a resident of Florida, County of Miami-Dade. Plaintiff is a blind, visually impaired handicapped person, and a member of a protected class of individuals under the ADA, pursuant to 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 et seq.

13.    As an individual who was visually impaired most of her life, Lezcano often is forced to rely upon technology to acquire the information she needs for her life's functions.

14.    Although, Lezcano, a single parent, continues to function at a high level in spite of her disability, she heavily relies on her screen reader to access the internet and all information contained therein.

**JACK KANG**

15.    Plaintiff Kang, at all times relevant and as alleged herein, is a resident of California, County of Los Angeles. Plaintiff is a blind, visually impaired handicapped person, and a member

of a protected class of individuals under the ADA, pursuant to 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.*

16.     As an individual who was visually impaired most of his life, Kang often is forced to rely upon technology to acquire the information he needs for his life's functions.

17.     Kang continues to function at a high level in spite of his disability, but he heavily relies on his screen reader to access the Internet and all information contained therein.

**DEFENDANT**

18.     Plaintiffs are informed and believe, and thereon allege Defendant is a for-profit corporation, incorporated in Florida and has its headquarters in Jacksonville, Florida.  Defendant operates nearly 300 stores, nationwide.  Defendant also maintain a physical presence in Mr. Kang's state of residence.   These retail stores provide to the public goods such as home goods, bed and bath supplies, jewelry, and both men and women's fashions.  Defendant's website is a *place of public accommodation* under the ADA because it serves to augment Defendant's physical locations by either providing the general public information on the various locations educating the general public as to its goods and services and also by providing the general public with the ability to purchase goods.

19.     Defendant's location is a public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). Defendant's website is a service, privilege, or advantage of Defendant's location.

20.     Defendant is subject to personal jurisdiction in this District. Defendant has been and is currently committing the acts or omissions alleged herein in this District that caused injury and violated the rights of Plaintiffs Lezcano and Kang and other blind and visually impaired consumers in contravention of the ADA. A substantial part of the acts and omissions giving rise

to Plaintiffs' claims occurred in this District. Specifically, Plaintiff has been denied the full use and enjoyment of the products, goods, and services of Defendant's website. The access barriers that exist on Defendant's website have caused a denial of Plaintiff Leczano, Plaintiff Kang and Plaintiff EAAN members' full and equal access and continue to deter them on a regular basis from accessing Defendant's website and doing business with Defendant. Similarly, the access barriers Plaintiffs Lezcano and Kang encountered on Defendant's website have impeded Plaintiffs Lezcano and Kang's full and equal enjoyment of goods and services offered at Defendant's brick-and-mortar location, and their ability to patronize these locations.

## THE AMERICANS WITH DISABILITIES ACT AND THE INTERNET

21.     The Internet has become an important source of information, a portal, and a tool for conducting business, engaging in everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind, and visually impaired persons alike.

22.     In today's technology-driven world, blind and visually impaired people have the ability to access websites using keyboards in conjunction with screen access software that vocalizes the visual information found on a computer screen or displays the content on a refreshable Braille display. This technology is known as screen reading software. Screen reading software is currently the only method by which a blind or visually impaired person may independently access the Internet. Unless websites are designed to be read by screen reading software, blind and visually impaired persons are unable to fully access websites, their information, products, or services contained thereon.

23.     Blind and visually impaired users of personal computers and mobile electronic devices have several screen reading software programs available to them. *JAWS, ChromeVox and NVDA* are popular screen reading software programs available for visually impaired users.

24.     For screen reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the blind or visually impaired user is unable to access the same content available to sighted users.

25.     The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0" hereinafter). WCAG 2.0 are well-established guidelines for making websites accessible to blind and visually impaired people as well as other persons who require screen reading technology to use computers and access the internet. These guidelines have been adopted and followed by business entities who comply with federal law to ensure that their websites are accessible to individuals with disabilities, including the blind and visually impaired users. Although WCAG 2.0 has not yet been formally adopted as the standard of website accessibility, it is currently one of the most widely-recognized and followed resources on the topic.

26.     Inaccessible or otherwise non-compliant websites pose common access barriers to blind and visually impaired persons. Common barriers encountered by blind and visually impaired persons include, but are not limited to, the following:

a. A text equivalent for every non-text element is not provided;

b. Title frames with text are not provided for identification and navigation;

c. Equivalent text is not provided when using scripts;

d. Forms with the same information and functionality as for sighted persons are not provided;

e. Information about the meaning and structure of content is not conveyed by more than the visual presentation of content;

f. Text cannot be resized without assistive technology up to 200 percent without loss of content or functionality;

g. If the content enforces a time limit, the user is not able to extend, adjust or disable it;

h. Web pages do not have titles that describe the topic or purpose;

i. The purpose of each link cannot be determined from the link text alone or from the link text and its programmatically determined link context;

j. One or more keyboard operable user interface lacks a mode of operation where the keyboard focus indicator is discernible;

k. The default human language of each web page cannot be programmatically determined;

l. When a component receives focus, it may initiate a change in context;

m. Changing the setting of a user interface component may automatically cause a change of context where the user has not been advised before using the component;

n. Labels or instructions are not provided when content requires user input;

o. In content which is implemented by using markup languages, elements do not have complete start and end tags, elements are not nested according to their specifications, elements may contain duplicate attributes and/or any IDs are not unique;

p. Inaccessible Portable Document Format (PDFs); and,

q. The name and role of all User Interface elements cannot be programmatically determined; items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

## FACTUAL BACKGROUND

27.      Defendant offers the commercial website www.steinmart.com to the public. The website offers features which should allow all consumers to access the goods and services which Defendant offers in connection with its physical locations.

28.      Based on information and belief, it is Defendant's policy and practice to deny Plaintiffs and Class Members, along with other blind or visually impaired users, access to Defendant's website, and to therefore specifically deny the goods and services that are offered and integrated with Defendant's locations. Due to Defendant's failure and refusal to remove access barriers to its website, Plaintiffs, Class Members and other visually impaired persons have been and continue to be denied equal access to Defendant's locations and the numerous goods, services, and benefits offered to the public through Defendant's website and structural locations.

### Defendant's Barriers on Defendant's Website Deny Plaintiffs Access

29.      Plaintiffs represent and are visually impaired and legally blind persons who cannot fully access the internet without the assistance of screen reading software. However, Plaintiff Lezcano is a proficient user of the JAWS screen reader and uses it to access the internet. Plaintiff Kang is a proficient user of the ChromeVox screen reader and uses it to access the internet.  Both Plaintiff Lezcano and Kang have visited Defendant's website using their respective screen readers.

30.      During their visits to Defendant's website, Plaintiffs Lezcano and Kang encountered multiple access barriers which denied Plaintiffs Lezcano and Kang full and equal access to the products, goods and services offered to the public and made available to the public on Defendant's website. Due to the widespread access barriers the exist on Defendant's website, Plaintiffs and Class Members have been deterred, on a regular basis, from accessing Defendant's website and visiting Defendant's brick-and-mortar locations.

31.     While attempting to navigate Defendant's website, Plaintiffs Lezcano and Kang encountered multiple accessibility barriers for blind or visually impaired people that include, but are not limited to, the following:

a. *Lack of Alternative Text* ("alt-text"), or a text equivalent. Alt-text is invisible code embedded beneath a graphical image on a website. Web accessibility requires that alt-text be coded with each picture so that screen reading software can speak the alt-text where a sighted user sees pictures. Alt-text does not change the visual presentation, but instead a text box shows when the mouse moves over the picture. The lack of alt-text on these graphics prevents screen readers from accurately vocalizing a description of the graphics. As a result, visually impaired customers are unable to determine what is on the website, browse, look for store locations, check out Defendant's programs and promotions, or make any purchases;

b. *Empty Links That Contain No Text.* The existence of empty links cause the function or purpose of the link not to be presented to the user. This can introduce confusion for keyboard and screen reader users;

c. *Redundant Links*. This occurs when adjacent links point to the same URL address which results in additional navigation and repetition for keyboard and screen reader users; and

d. *Linked Images Missing Alt-text*. The existence of missing alternative text which causes problems if an image within a link contains no text and that image does not provide alt-text. A screen reader then has no content to present the user as to the function of the link, including information contained in PDFs.

32.     Plaintiffs Lezcano and Kang attempted to do business with Defendant on Defendant's website and both encountered barriers to access on Defendant's website.

33.     Despite attempts to do business with Defendant on its website, the numerous access barriers contained on the website and encountered by Plaintiffs Lezcano and Kang have denied them both full and equal access to Defendant's website. As a result of the barriers on Defendant's website, Plaintiff Lezcano, Kang and Class Members continue to be deterred on a regular basis from accessing Defendant's website. Likewise, based on the numerous access barriers, Plaintiffs Lezcano, Kang and Class Members have been impeded from the full and equal enjoyment of goods and services offered in Defendant's stores and from making purchases at such physical locations.

### Defendant Must Remove Barriers to Its Website

34.     Due to the inaccessibility of Defendant's website, blind and visually impaired customers such as Plaintiffs Lezcano and Kang and Class Members who need screen readers, cannot fully and equally use or enjoy the products, goods, and services Defendant offers to the able-sighted public on its website. The access barriers Plaintiffs Lezcano and Kang encountered on Defendant's website have caused a denial of their full and equal access in the past, and now continue to deter Plaintiffs Lezcano and Kang on a regular basis from accessing Defendant's website. In addition, the access barriers Plaintiffs Lezcano and Kang encountered on Defendant's website have deterred Plaintiffs Lezcano and Kang from visiting Defendant's structural locations.

35.     If Defendant's website was equally accessible to all, Plaintiffs Lezcano, Kang and Class Members could independently navigate the website and complete a desired transaction in the same manner as sighted individuals.

36.     Through their attempts to use Defendant's website, Plaintiffs Lezcano and Kang have actual knowledge of the access barriers that exist on Defendant's website, which render the available virtual services inaccessible and independently unusable by blind and visually impaired people.

37.     Because maintaining and providing a website that is fully and equally accessible to all consumers, using the guidance of the success criteria outlined by the WCAG 2.0 Guidelines, would provide Plaintiffs Lezcano and Kang, Class Members and other visually impaired consumers with full and equal access to Defendant's website, Plaintiffs and Class Members allege that Defendant has engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

a. Construction and maintenance of a website that is inaccessible to visually impaired individuals, including Plaintiffs Lezcano and Kang and Class Members;

b. Failure to construct and maintain a website that is sufficiently intuitive so as to be equally accessible to visually impaired individuals, including Plaintiffs Lezcano and Kang and Class Members;

c. Failure to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually impaired consumers, such as Plaintiffs Lezcano and Kang and Class Members, as members of a protected class.

38.     Defendant therefore uses standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others, as alleged herein.

39.     The ADA expressly contemplates the type of injunctive relief that Plaintiffs seek in this action. In relevant part, the ADA requires:

"In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities. Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy. . . (42 U.S.C. § 12188(a)(2).)

12

40.     Because Defendant's website is not equally accessible, and because Defendant lacks a corporate policy that is reasonably calculated to cause its website to become and remain accessible, Plaintiffs and Class Members invoke the provisions of 42 U.S.C. § 12188(a)(2) and seek a permanent injunction requiring Defendant to make the necessary changes to the website so that it complies with the ADA. This compliance may result in the Defendant retaining a qualified consultant to assist Defendant to comply with the ADA by making the website accessible, using the success criteria outlined in the WCAG 2.0 guidelines as a source of reference. As with other entities seeking to become ADA compliant, Defendant should utilize a consultant to:

a. Train Defendant's employees and agents who develop the Defendant's website on accessibility and compliance with the ADA using the success criteria outlined in the WCAG 2.0 guidelines as a source of reference;

b. Regularly evaluate the accessibility of Defendant's website to maintain its accessibility as required by the ADA using the success criteria outlined in the WCAG 2.0 guidelines as a source of reference;

c. Regularly test end-user accessibility of the website by blind or visually impaired screen reader users to ensure that Defendant's website is accessible to blind and visually impaired individuals who would access the website with screen reading technology; and,

d. Develop an accessibility policy that is clearly disclosed on its website, with contact information for users to report accessibility-related problems and be provided with meaningful resolution after Defendant has investigated and identified the specific issue.

41.     If Defendant's website was accessible, Plaintiffs Lezcano and Kang, Class Members and other similarly situated blind and visually impaired people could independently view

offerings on the website, shop for and otherwise research related products and services available via Defendant's website.

42.     Although Defendant may currently have centralized policies regarding the maintenance and operation of its website, Defendant lacks a plan and policy reasonably calculated to make its websites fully and equally accessible to, and independently usable by, blind and other visually impaired consumers.

43.     Without injunctive relief, Plaintiffs Lezcano and Kang, Class Members and other visually impaired consumers will continue to be unable to independently use the Defendant's website in violation of their rights.

## CLASS ACTION ALLEGATIONS

44.     Plaintiffs, on behalf of themselves and other similarly situated individuals, seek to certify a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2) (b)(3), the *Nationwide class* is initially being defined as follows:

> All legally blind, visually impaired and low vision individuals who have attempted to access Defendant's website by use of a screen reading software during the applicable limitations period up to and including final judgment in this action.

45.     The *Florida Class* is initially being defined as follows:

> All legally blind, visually impaired and low vision individuals in the State of Florida who have attempted to access Defendant's website by use of a screen reading software during the applicable limitations period up to and including final judgment in this action.

46.     Those excluded from the classes defined above are as follows:  The judge, court personnel, attorneys for the Plaintiffs and any members of their immediate families.  Also excluded

is Defendant, its parent company or subsidiary, any officers, directors, legal representatives, assigns, successors, predecessors and any entities within which Defendant has controlling interest. Plaintiff hereby reserves the right to amend the definition of the above-described Classes as this matter is litigated.

47.   <u>Numerosity</u>.   Required under Fed. R. Civ. P. 23(a)(1). With the youngest of the Baby Boomer generation hitting 65 by 2029, the number of people with visual impairment or blindness in the United States is expected to double to more than 8 million by 2050, according to projections based on the most recent census data and from studies funded by the National Eye Institute, part of the National Institutes of Health.[1] In addition to those individuals born with less the perfect visual acuity, the ability to see is affected by a number of health conditions, including but not limited to diabetes, or age related macular degeneration. For instance, the Center for Disease Control and Prevention reported that the number of people who experience diabetic retinopathy was expected to triple between 2005 to 2050 from 5.5 million to 16 million people.[2] The exact number and identities of all members of the Class are currently unknown to the Plaintiffs, Plaintiffs are informed and believe that there are several hundreds of thousands of individuals who would qualify to be included in the Class. Based on the number of customers who have been reported to have visited Defendant's Florida stores and website traffic, upon information and belief, the Florida Class is composed of at least several thousand individuals. As such, the class and its Members are readily definable.

---

[1] "Visual impairment, blindness cases in U.S. expected to double by 2050" National Institutes of Health, U.S. Dept. of Health & Human Services, May 19, 2016.
https://www.nih.gov/news-events/news-releases/visual-impairment-blindness-cases-us-expected-double-2050
[2] "The Burden of Vision Loss", Center for Disease Control and Prevention, September 25, 2009.

48.     Typicality.  Plaintiffs Lezcano and Kang and Class members' claims are typical of the claims of the Members of the Class as all Members of the Class have been similarly impacted and adversely affected by Defendant's intentional and continuous non-compliance with the ADA.

49.     Adequacy.  Plaintiffs will fairly and adequately protect the interests of all Class Members.  Plaintiffs have no interests that are divergent or contrary to those of the other Class Members.  Further, to ensure adequacy of representation for the Class, Plaintiffs have retained experienced and competent counsel.

50.     Superiority.  Bringing a class action is a superior method for attaining fair and efficient adjudication of this controversy.  As the damages that are typically sustained by individual Class Members are normally nominal or relatively small, the expenses and costs related to bringing an action effectively act as barrier to those Class Members and preclude them from realizing the redress they seek.  Additionally, the adjudication of this matter through this class action would prevent inconsistent adjudications and avoid the potential of the perception of impropriety in the event of conflicting decisions.  The management of this litigation as a class action will not present difficulty for the Plaintiffs or their counsel.

51.     Common Questions Predominate: There are questions of law and fact that exist as all of the Class Members and predominate over any questions solely affecting individuals Members.  The common questions of law and fact that are applicable to the Class Members are as follows:

   a.   Whether Defendant's website www.steinmart.com is inaccessible to those who are visually impaired and who use screen reading software to access the Internet;

b.  Whether the operation and coding of Defendant's website, www.steinmart.com, precludes the access of Plaintiffs and Class Members who use screen reading software;

c.  Whether the deficiencies in the operation of the website and the inaccessibility by Plaintiffs and the Class Members violate the Americans with Disabilities Act of 1990, 42 U.S.C. §12181 *et seq.;*

d.  Whether the website deficiencies can be corrected through reasonable means and whether those corrections will allow the website to be accessible by Plaintiffs and Class Members;

e.  Whether it is necessary and appropriate for the Court to provide injunctive relief against the Defendant to require it to revise its website to make it readily accessible and usable by those who are visually impaired;

f.  Whether Plaintiffs and Class Members are entitled to recover damages as a result of the non-compliance of the website with the requirements of the ADA.

g.  Whether any additional relief should be granted by the Court in this action to ensure the appropriate redress to Plaintiffs and Class Members.

52.  The prerequisites to maintaining a class action for injunctive relief or equitable relief or pursuant to Rule 23(b)(2) are met, as Defendant has refused to act or has acted on grounds generally applicable to the Class.  Therefore, injunctive or equitable relief would be appropriate relief for the entire Class.

53.  The prerequisites to maintaining a class action for injunctive relief or equitable relief or pursuant to Rule 23(b)(3) are met, as questions of law or fact that are common to the Class predominate over those questions affective specific individual Members.  A class action is a more

efficient method of adjudicating the issues in controversy and will also promote uniformity within the adjudications.

54.     Should these actions be separately pursued, there is a substantial risk of the establishment of inconsistent and inequitable decisions as well as inconsistent demands made of Defendant.  Moreover, should individual actions lie, the disposition of those actions may have the effect of being dispositive of the interests of all of the Class Members, although not all Class Members would be parties to those actions.

55.     Defendant's failures and its systematic practices of discrimination allow for relief to the entire Class to be an appropriate action as Defendant's conduct and actions are applicable to the Class Members and Plaintiffs seek redress in equity so as to make all Class Members whole.

### FIRST CAUSE OF ACTION

### VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT OF 1990

### 42 U.S.C. § 12181 *et seq.*

**(on behalf of Plaintiffs, the Nationwide Class and the Florida Class)**

56.     Plaintiffs re-allege and incorporate by reference all paragraphs alleged above.

57.     Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 et seq., provides:

"No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." (42 U.S.C. § 12182(a).)

58.     Defendant's location is a public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). Defendant's website is a service, privilege, or advantage of Defendant's location. Defendant's website is a service that is integrated with this location.

59.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity. (42 U.S.C. § 12182(b)(1)(A)(i).)

60.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals. (42 U.S.C. § 12182(b)(1)(A)(ii).)

61.     Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things:

"[A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

(42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).)

62.     Pursuant to 42 U.S.C. §12181(7)(E) Defendant's website is a place of public accommodation under the ADA because it serves to augment its locations by providing the general public information on the various locations and educate the general public as to its goods and services, and also to provide the general public with the ability to purchase goods and services. As such, the Defendant's website must be in compliance with the ADA. However, the Defendant's website is not in compliance with the ADA. Plaintiffs have suffered injuries in fact because of the website's (and Defendant's) non-compliance with the ADA.

63.     As a result of the inaccessibility of Defendant's website and by the barriers to access in its website (when removal of those barriers is readily achievable), Defendant has denied individuals with disabilities who are visually impaired full and equal enjoyment of the information and services that Defendant has made available to the general public on its website, in derogation of 42 U.S.C. §12101 et. seq., and as prohibited by 42 U.S.C. §12182 et. seq.

64.     Therefore, due to the disabilities of Plaintiffs Lezcano and Kang and visually impaired members of EAAN and Defendant's failure to have its website adequately accessible to individuals with visual impairments, Plaintiffs Lezcano and Kang were unable to comprehend Defendant's website and could not take advantage of many offerings or information contained therein.

65.     Defendant has violated the ADA (and continues to violate the ADA) by denying access to its website to individuals with disabilities who are visually impaired and who require the assistance of interface with screen reader software to comprehend and access internet websites.

66.     The acts alleged herein constitute violations of Title III of the ADA, and the regulations promulgated thereunder. Plaintiffs and Class Members, have a physical disability that

substantially limits the major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiffs Lezcano and Kang have been denied full and equal access to Defendant's website, have not been provided services which are provided to other patrons who are not disabled, and have been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

67.     Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiffs requests relief as set forth below.

## PRAYER FOR RELIEF

**WHEREFORE, Plaintiffs pray for judgment against Defendant, as follows:**

1.     A Declaratory Judgment that, at the commencement of this action, Defendant was in violation of the specific requirements of Title III of the ADA 42 U.S.C. § 12181 *et seq.*, and the relevant implementing regulations of the ADA, for Defendant's failure to take action that was reasonably calculated to ensure that its websites are fully accessible to, and independently usable by, blind and visually impaired individuals;

2.     A preliminary and permanent injunction enjoining Defendant from further violations of the ADA, 42 U.S.C. § 12181 *et seq.*, with respect to Defendant's website;

3.     A preliminary and permanent injunction requiring Defendant to take the steps necessary to make Defendant's website readily accessible to and usable by blind and visually-impaired individuals;

4.     For attorneys' fees and expenses pursuant to all applicable laws including, without limitation, pursuant to 42 U.S.C. § 12188(a)(1);

5.     For pre-judgment interest to the extent permitted by law;

6.      For costs of suit; and

7.      For such other and further relief as this Court deems just and proper.


## DEMAND FOR JURY TRIAL

Plaintiffs hereby respectfully request a trial by jury on all appropriate issues raised in this Complaint.

Dated: June 25, 2019


Respectfully submitted,

*/s/ Yvette J. Harrell*
Yvette J. Harrell
Florida Bar No: 12936
Legal Justice Advocates, LLP
1629 K Street NW, Suite 300
Washington, D.C. 20006
Tel: (202) 290-6671
Email: yh@legaljusticeadvocates.com
*Counsel for Plaintiff and Proposed Class*